UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FRANCISCO GOMEZ-DIAZ a/k/a Jose Gomer,
a/k/a Joe Robert Torres,

vs.                                                                  Case No. 8:03-CV-2300-T-27MAP
                                                                     Crim. Case No. 8:02-CR-179-T-27

UNITED STATES OF AMERICA
_____/

## ORDER

**PURSUANT TO THE** Eleventh Circuit Court of Appeals' order vacating and remanding this cause, an evidentiary hearing was conducted on February 9, 2006. Petitioner was present and represented by counsel.

This Court was instructed by the Eleventh Circuit to determine (1) whether Petitioner's initial statement of his desire to appeal was sufficient to trigger the per se duty to appeal outlined in *Flores-Ortega*, and (2) if not, whether Petitioner's attorney fulfilled his constitutional duty to consult with his client and to make a reasonable effort to determine Petitioner's wishes, and whether he acted in accordance with those wishes.

Petitioner pleaded guilty pursuant to a written plea agreement, which contained an appeal waiver clause.(Dkt. 32). At the time of his guilty plea, Petitioner was represented by Frank Zaremba, an Assistant Federal Public Defender. Zaremba and Petitioner testified during the evidentiary hearing. Zaremba's testimony was unequivocal that immediately following sentencing, before Petitioner was removed from the courtroom by the United States Marshal, with the assistance of an interpreter, he discussed with Petitioner his right to appeal and the advantages and disadvantages of pursuing an appeal as opposed to attempting to earn a Rule 35 motion for reduction of sentence from the Government.

Dockets.Justia.com

Zaremba again conferred with Petitioner at the jail where Petitioner was confined. Zaremba specifically recalled discussing Petitioner's right to appeal, the appeal waiver clause in the plea agreement, and the possibility of earning a Rule 35 motion from the Government with Petitioner during that conference. He recommended that Petitioner forego his right to appeal and try to earn a Rule 35 motion based on the policy of the United States Attorney's Office not to consider a Rule 35 motion if a Defendant filed a direct appeal. He explained that he was particularly disappointed that Petitioner had not earned a § 5K2.1 substantial assistance motion and that he and Petitioner intended to "resurrect" Petitioner's attempts to earn substantial assistance by way of a Rule 35 motion.[1]

On December 10, 2002, as he closed the file, Zaremba sent a letter to Petitioner confirming that Petitioner did not wish to appeal and that Zaremba agreed with that decision. (Court's Exhibit #1). That the letter was addressed to Petitioner at Atlanta USP is consistent with Petitioner's testimony that he was transferred from Charlotte County to Atlanta and then to Fort Worth. Zaremba noted that the letter was not returned to him as undeliverable.[2]

From these circumstances, this Court finds that Petitioner did not, contrary to his testimony, direct Zaremba to file an appeal. Further, not only did Zaremba fulfill his constitutional duty to consult with Petitioner concerning his right to appeal, he explained the advantages and disadvantages

---

[1] Petitioner was sentenced on November 4, 2002. According to the U.S. Marshal's prisoner information sheet, Form 129 (Government's Exhibit #2), Petitioner was transferred from the Hillsborough County Morgan Street Jail to Charlotte County on November 7, 2002. From Charlotte County, Petitioner was transferred via Atlanta FSP to the prison facility at Fort Worth, Texas. Accordingly, Zaremba's conference with the Petitioner at the jail after sentencing would have occurred within the ten day period within which to file a Notice of Appeal. Petitioner testified that *four* days after his sentencing, he spoke with Zaremba at the jail and told him he wanted to appeal because of the length of his sentence. Petitioner is obviously mistaken, as the Marshal's prisoner information sheet establishes that he was transferred to Charlotte County on November 7th.

[2] Petitioner maintains that he never received Zaremba's letter, which is a plausible statement, considering that he was in transit while at Atlanta USP.

of an appeal in light of the United States Attorney's Office policy not to consider a Rule 35 motion if an appeal was filed. Zaremba had pursued a § 5K2.1 Substantial Assistance motion prior to sentencing and intended to resurrect those efforts via a Rule 35 motion post-sentencing. He recalled that he had more than one conversation with Petitioner after sentencing concerning the potential for a Rule 35 motion. He discussed with Petitioner his right to appeal with the assistance of an interpreter immediately after the sentencing hearing while still in the courtroom. His standard practice was to discuss the matter with his client until he determined what the client wanted to do and he would then follow the instructions of his client. He testified that it was his standard practice to file an appeal if a client requested one, even if he disagreed with that decision. He was adamant that he would have perfected the appeal if Petitioner had requested that of him. There is no reason to question Zaremba's credibility in this regard.

Moreover, Zaremba's recollection of his conversations with his client are corroborated. He maintained contact with the Assistant United States Attorney and the DEA agent after sentencing, hoping to "resurrect" the Rule 35 discussions. His December 10, 2002 letter is consistent with Zaremba's recollection that he recommended that Petitioner pursue a Rule 35 motion rather than appeal, in light of the U.S. Attorney's policy. Moreover, when Petitioner wrote to Zaremba inquiring about his appeal (Petitioner's Exhibit #1), Zaremba's May 22, 2003 response further corroborates Zaremba's recollection of his discussions with Petitioner and confirms that Zaremba did not disregard a specific instruction to file a Notice of Appeal.[3] (Government's Exhibit #1).

---

[3] Some confusion arose concerning when Zaremba met with Petitioner at the Morgan Street jail after sentencing. According to Petitioner, it was <u>four</u> days after his sentencing, which the records of the Marshal's service belie. According to Zaremba, he specifically recalls meeting with Petitioner after sentencing at the jail. In his file, Zaremba had an invoice from a translator referencing a two hour meeting at the Morgan Street jail on January 2, 2003 (Petitioner's Exhibit #2). Given that Petitioner was transferred from the Morgan Street jail to Charlotte County on November 7, 2002 that two hour meeting could not have taken place on January 2, 2003.

Finally, that Zaremba understood that Petitioner did not wish to pursue his appeal is evidenced by a motion Zaremba filed on December 2, 2002 in which he sought a transfer of Petitioner to his home country to serve his sentence pursuant to 18 U.S.C. § 4102. (Dkt. 53). That relief is expressly prohibited if an appeal is pending. 18 U.S.C. § 4100(c). Clearly, given Zaremba's experience as a Assistant Federal Public Defender, he would not have sought Petitioner's transfer to a prison in Mexico if he had understood that Petitioner had wanted him to perfect an appeal.

According to Petitioner, four days after his sentencing, he met with Zaremba at the jail and instructed him to file an appeal because of the length of his sentence. He said he was "confused" by Zaremba about the "other thing," apparently referring to the appeal waiver clause in his plea agreement. According to Petitioner, he did not know he was waiving his right to appeal pursuant to his plea agreement. He claims he did not understand that he was waiving his right to appeal even though the Magistrate Judge discussed it with him during the plea colloquy. He says he signed the plea agreement but didn't understand it.

In sum, the Court finds Petitioner's testimony to be less than credible. Petitioner is a three time convicted felon. In 1997, he was sentenced to 18 months in federal prison for conspiracy to distribute marijuana. He served time in a Florida prison after pleading guilty to possession with intent to distribute cocaine and marijuana. He was deported but re-entered the United States illegally, using an alias. The transcript of the plea colloquy belies his contention that he did not understand that he was waiving his right to appeal by virtue of his plea agreement. Although he was adamant that he met with Zaremba four days after his sentencing in the Hillsborough County Jail, the records of the Marshal's service establish that he was transferred to Charlotte County three days after his sentencing. He also maintained that he remained at the Hillsborough County Jail for

approximately ten days after his sentencing, likewise shown to be impossible based on the Marshal's transfer records.

Further, Petitioner's contention that he directed Zaremba to file an appeal is not believable, based on the actions Zaremba took after the sentencing. Based on Zaremba's testimony and his standard practice as an experienced Assistant Federal Public Defender, it is improbable that he would have disregarded a directive by Petitioner to perfect the direct appeal. It is apparent from Zaremba's actions that he understood that Petitioner did not wish to appeal. Based on the testimony and evidence presented, therefore, this Court finds that Petitioner did not expressly instruct Zaremba to file a direct appeal. The per se duty to appeal outlined in *Flores-Ortega* was not, therefore, triggered.[4]

The Court further finds that Zaremba fulfilled his constitutional duty to consult with Petitioner concerning Petitioner's right to appeal and the consequences of the appeal waiver clause in Petitioner's plea agreement. He discussed with Petitioner the advantages and disadvantages of pursuing the appeal and what effect an appeal would have on any chance to obtain a Rule 35 sentence reduction motion from the United States Attorney's Office in light of their policies. Zaremba made every reasonable effort to determine Petitioner's wishes and acted in accordance with those wishes, as he understood them. In light of the appeal waiver clause in Petitioner's plea agreement and the policy of the United States Attorney's Office not to consider a Rule 35 motion if a direct appeal was pursued, Zaremba recommended to Petitioner that he not appeal. Moreover, he did not believe there to be any non-frivolous issues to present on appeal and did not believe that a basis for appeal existed within the limited exceptions contained in the appeal waiver clause of Petitioner's plea agreement. In accordance with his standard procedure, when he closed Petitioner's

---

[4] *Roe v. Flores-Ortega*, 528 U.S. 470 (2000).

file, he confirmed with Petitioner that an appeal would not and had not been filed in accordance with Petitioner's wishes and that Zaremba agreed with that decision. That letter, together with Zaremba's May 22, 2003 response to Petitioner's inquiry, were written when Zaremba would have had a distinct memory of his conversations with Petitioner.

In sum, the Court finds and concludes that Zaremba's representation did not fall below an objective standard of reasonableness. *See Strickland v. Washington*, 466 U.S. 668 (1984). He did not disregard an express instruction from Petitioner to file an appeal. Clearly, therefore, Zaremba's performance was not deficient under the *Strickland* test. Accordingly, Zaremba acted reasonably and Petitioner's claim of ineffective assistance of counsel is DENIED. "Counsel performs in a professional unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000).

For these reasons, this Court **FINDS AND CONCLUDES** that Petitioner was not denied the effective assistance of counsel and that his Petition should be dismissed. The Clerk is directed to close this case.

**DONE AND ORDERED** in chambers this 17th day of February, 2006.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record
U.S. Probation Office
U.S. Marshal's Office
Petitioner c/o Bureau of Prisons